1815.

BARROW
v.
RHINELAN-
DER.

BARROW AND OTHERS, *assignees of* PRIOR, *a bankrupt, against* RHINELANDER.

Where a merchant, in embarrassed circumstances, borrowed money, at dif-
ferent times, of his confidential clerk, who took various bonds and securi-
ties for such loans, and for which, by agreement, he was to be allowed a
usurious interest; and, during the period of ten years, the parties, from
time to time, came to a settlement of their accounts, and the merchant
gave his bonds and further securities for the balance of principal and in-
terest, due on such settlements; the court ordered all the bonds, obliga-
tions, and settlements, to be set aside, and the whole accounts, at large,
to be opened between the parties, from the first commencement of their
transactions, there being not only evidence of mistakes and omissions in
the accounts, but of oppression, imposition, and undue advantage, taken
of the necessities of the principal.

The master, in stating the account between the parties, was directed to allow
*rests* therein, at such times as the parties liquidated their accounts, and
agreed that the interest then due, should be considered as principal; and
that the clerk should be charged with the amount of all the securities, as-
signed to him, which had been paid, or which he had refused to deliver to
his principal for collection, or which had been lost by his negligence, de-
fault, or want of due diligence in collecting them, with interest, &c.

*EDMUND PRIOR,* a merchant in the city of *New-York,*
became bankrupt, in *March,* 1802. The defendant, who
was his confidential clerk, and kept his cash and papers,
paid and received moneys, sold goods, made entries in the
books, &c. ; was retained in his service, as such clerk, from
the 29th of *November,* 1790, to the 1st of *May,* 1796, and
from the 4th of *July,* 1797, to the 4th of *July,* 1801.
During the time the defendant was in the service of *Prior,*
the affairs of the latter became greatly embarrassed; and the
defendant lent him various sums of money, at different
times. The bill stated, that, at the request of the defend-
ant, no entries of these loans were made in the books; that,
on the 29th of *May,* 1792, *Prior* executed to the defend-
ant, a bond for 3,200 pounds; and, on the 15th of *June,*
1792, another bond for 1,966 pounds, which sums, however,

were not admitted; that, before 1796, *Prior* paid the de- 1815.
fendant 4,000 dollars; and on the 30th of *April*, 1796, he BARROW
and the defendant came to a 'settlement, when *Prior* being v.
unable to pay, the defendant demanded 18 per cent. interest, RHINELAN-
to which *Prior* assented, and gave his bond to the defendant DER.
for 4,174 pounds, the balance then supposed to be due.
*Prior*, also, gave a bond and mortgage to the defendant for
2,000 pounds, which was to be endorsed on the other bond,
but which was not done; that, on the 18th of *September*,
1796, *Prior* assigned to the defendant, as security, two bonds
and twenty-eight notes, amounting to 8,154*l*. 3*s*. 9*d*., ex-
clusive of interest; and, on the 8th of *June*, 1798, he assigned
to the defendant, as security, five other bonds, and thirty-
three other notes, the amount of which was unknown to the
plaintiffs; and, on the 4th of *February*, 1799, he further as-
signed to the defendant eight bonds and fifty-two notes, the
amount of which was unknown; the counterparts of the as-
signments were kept in an iron chest, to which the defend-
ant and *Prior* only had access, and were lost, or taken
away by means unknown; that the defendant took other
notes with blank endorsements, and nine watches, for which
he refused to account; that the defendant did not use due
diligence to collect or secure the notes, &c. so assigned to
him, whereby many of them were lost; that to secure the
usurious interest on the bond of. 4,174 pounds, *Prior*, on
the 30th of *April*, 1800, gave a bond to the defendant for
1,957 dollars, payable the 30th of *May* following; and, on
the 12th of *December*, 1800, he gave the defendant
another bond for 4,500 dollars; to secure which he executed
a mortgage to the defendant for 4,805 acres of land in *Clin-
ton* county; and for which he, the next day, executed to the
defendant an absolute deed, in which was expressed a consi-
deration of 2,100 pounds, though there was no other consi-
deration than the debt; that *Prior* was in ill health, em-
barrassed, and greatly imposed on and oppressed by the
defendant; that on the 9th of *June*, 1800, he gave to the

defendant a power to transfer 44 shares in the *Pennsylvania Population Company*, which were worth 3,500 or 4,000 dollars; that the transfer was absolute, though no consideration passed between the parties; that, in the spring of 1792, *Prior* found, on balancing his cash account, a deficiency of 1,052*l.* 8*s.* 2*d.*; and that the cash book, which was kept by the defendant, for the four years subsequent, showed great deficiencies; that, in 1801, the defendant said he wanted *Prior's* books to make out his account; that he then overlooked them for all the previous time of his clerkship, and made many alterations; that the defendant refused to account for the securities, the deficiency of cash, and the watches, or to allow for the shares and lots of land, or to give any account of the money really and truly due to him.

The bill waived all penalties and forfeitures, and prayed an account; that the defendant be charged with the value of the shares in the *Population Company*, and the unaccounted deficiencies, and for the notes, &c. lost by his neglect; that all property on which he has a lien might be sold; and that he deliver up and cancel the mortgage, assignments, &c. deed for the lands in *Clinton*, &c.

The defendant, in his answer, admitted that he was in the confidence of *Prior*, and had access to his papers, &c.; that he was the chief clerk, and usually made the entries in the cash book, and posted the books, though *Prior* sometimes did it, or employed another clerk for that purpose; that *Prior* directed his mercantile concerns, but was absent from home the greater part of the year 1791; that while defendant was in his employ, *Prior's* affairs were deranged, and, during the latter part of the time, greatly embarrassed, and his cash accounts much deranged; that the defendant communicated every error to *Prior*, who used to examine the books; that the cash and valuable papers were kept in an iron chest, of which the defendant kept one key, and *Prior* another; that *Prior* and his wife, and other clerks, had access to the chest. He admitted, that, taking a balance

of the cash account from the 12th of *May*, 1792, to the 30th of *May*, 1792, there appeared a deficit of cash of 1,059*l.* 8*s.* 2*d.*, which the defendant discovered and communicated to *Prior;* but he denied that the deficiency arose from his means, or that *Prior*, then, supposed so, but he believed it was caused by *Prior's* omitting an entry of the application, or remittance, of certain money received by him of *J. G.;* that there appeared, from the cash book, various other deficiencies, down to the 4th of *July*, 1801 ; that the overrunnings, however, exceeded the deficiences in number and amount. Between the 30th of *May*, 1792, and the 30th of *May*, 1796, the deficiencies were 3,452 dollars and 4 cents. The defendant alleged, that many of the entries were made by *Prior*, and his other clerks ; and that the mistakes were imputable to them, and not to the defendant; and that none of the mistakes, &c., arose from fraud ; and that *Prior* had acquitted him of all blame in regard to them ; that he was possessed of considerable property in money and securities when he became clerk; that *Prior* soon applied to him to borrow money ; that he frequently lent him money, and asked the legal interest. The first loan, of 17*l.* 10*s.*, was the 14th of *January*, 1796, 46 days after the commencement of his clerkship ; that these loans were as regularly entered on the books as other transactions; that on the 25th of *May*, 1792, *Prior* gave the defendant a bond for 3,200*l.* ; on the 15th of *June*, 1792, another bond for 1,966*l.* ; and on the 23d of *October*, 1792, another bond for 960*l.* ; that, on the 15th of *May*, 1793, they accounted together, and a balance of 5,962*l.* 19*s.* 11*d.*, was found due to the defendant ; on the 15th of *May*, 1794, they accounted together, when *Prior* owed him 5,806*l.* 11*s.* 7*d.*, and gave another bond for that sum, on receiving which, the defendant cancelled the two bonds for 3,200*l.* and 1,966*l.* ; that, on the 30th of *April*, 1796, they accounted together, and a final settlement was made, when *Prior* signed the account made out by the defendant, from the books, and

1815.

BARROW
v.
RHINELAN-
DER.

gave it to the defendant; that they settled, at the same time, as to the bond for 5,806*l.* 11*s.* 7*d.*, with the interest, which he denied to be usurious, or at the rate of 18 per cent.; that *Prior* then agreed to give the defendant security, by bond and mortgage, and executed two bonds, one for 2,000*l.*, and the other for 4,174*l.* 12*s.* 11*d.*, being distinct parcels of the debt of 6,174*l.* 12*s.* 11*d.* on receiving which bonds, the defendant gave up the one for 5,806*l.* 11*s.* 7*d.*; that, on the 18th of *September*, 1797, *Prior* assigned to the defendant, as security, two bonds and 28 notes, amounting to 8,514*l.* 3*s.* 5*d.*; and, on the 18th of *June*, 1798, 38 bonds and bills, amounting to 10,738*l.* 16*s.*, were assigned to the defendant to secure the bond of 4,174*l.* 12*s.* 11*d.*; that these bonds and notes were a confidential deposit, and *Prior* was to act as the owner of them; that, on the 4th of *February*, 1799, *Prior* assigned to the defendant eight bonds and 52 notes, 35 of which had been included in the former assignments; the nominal amount of the securities so assigned being 20,648*l.* 18*s.* 9*d.*, on the same confidential deposit; that, on the 9th of *February*, 1801, the defendant gave notice of the assignments to the debtors; and, on the 4th of *June*, 1801, he forbade any payments to *Prior*, and commenced collecting the debts, and used due diligence; and he accounted for the non-collection of several of the debts. The defendant further stated, that, with the consent of *Prior*, he took from the iron chest several *Lock Navigation* shares, but had received no dividend on them; that, on the 23d of *May*, 1799, *Prior*, as further security, assigned to him 44 shares in the *Pennsylvania Population Company*, which he held as security; that he took three watches only, for which he charged himself at the selling prices; that, on the 12th of *December*, 1800, he took *Prior's* bond for 4,500 dollars, but denied that it was for usurious interest; that, when interest was payable, it was included in new bonds, and new bonds taken for the principal; that the bond of the 30th of *April*, 1800, for 1,957

dollars, was for interest supposed to be due; that, on the 12th of *December*, 1800, *Prior* gave him the bond, and a mortgage on the *Clinton* lands, for 4,500 dollars, for interest supposed to be due, and for some payments on the shares in the *Population Company*. The defendant admitted, that he held these lands, as security, though the deeds were absolute. He denied that he had kept false accounts, or made alterations in the books of *Prior*.

*Prior* and his wife, and several other witnesses, were examined. The two former proved an express agreement between the parties, by which *Prior* was to allow, and did allow, the defendant usurious interest on the moneys loaned, viz. at the rate of one and a half per cent per month. Various mistakes, also, in the accounts, were proved, and various instances of an abuse of confidence by the defendant. The facts admitted by the answer will be sufficient to show the nature of the transactions between the parties, without entering into a detail of the evidence.

The cause was argued by *Riggs* and *Boyd*, for the plaintiffs, and *T. A. Emmet* and *Munro*, for the defendant. The argument was chiefly occupied in the examination of the answer, depositions, and schedules. To show that the settlements of the accounts ought to be opened, and that the plaintiffs were entitled to relief, the counsel cited *Bosanquet* v. *Dashwood, Cases temp. Talbot*, 37. 2 *Schoale & Lefroy*, 492. 3 *P. Wms*. 288. 2 *Atk*. 330. 1 *Atk*. 352. *Talbot's Cases*, 111. 5 *Vesey*, 48. 485. 7 *Vesey*, 599. 8 *Vesey*, 369. 11 *Vesey*, 358. 13 *Vesey*, 47. 2 *Atk*. 112. 119. 2 *Bro. C. C.* 47.

The counsel for the defendant, to repel the charge of usury, entered into a calculation, showing that the sums loaned, together with *compound interest* thereon, exceeded the amount of the securities taken.

BARROW
v.
RHINELAN-
DER.

THE CHANCELLOR. This is a strong and peculiar case, which calls for relief. There appears to be very great reáson to presume an abused confidence. The defendant was the confidential clerk of *Prior*, and kept his cash accounts, and had free access to all his papers and moneys. From the beginning almost of their connexion, *Prior* was embarrassed, and had recourse to the defendant for the loan of moneys. This created, at once, a delicate relation between the master and the servant; and the rapidity with which loans and debts were accumulated, securities exacted, the load of dependency increased, and blind and necessitous submission yielded, is distressing to learn, even as told in the defendant's answer. There are two witnesses to the charge of usury; and the attempt made, by the defendant, to get rid of the charge, under the explanation of taking compound interest, is not sufficient. The defendant does not put himself upon the benefit of the settlements made from time to time, but he, in fact, opens the accounts by his answer, and admits that the entries in the cash books were generally made by him, and that they contain the evidence of his loans. There is, also, proof of mistakes and deficiencies in the cash books, and of alterations. One mistake, for instance, of a charge, by the defendant, of 500*l.*, on the 15th of *June*, 1792, is not in the books. Other mistakes are alleged and shown; other instances of abused confidence are charged, as taking property from *Prior*, without his assent. In short, there are so many unpleasant and suspicious circumstances attending this case, leading so strongly to an inference of usury, oppression, and fraud, that it appears essential to the honour of the court, and the ends of justice, that all these multiplied settlements and obligations should be set aside, and that an account, at large, from the commencement of their dealings, should be taken and stated.

The cases cited by the counsel for the plaintiff, bear very pointedly upon the circumstances of this case, and show, that there is nothing unusual in granting the relief. Thus,

in *Bosanquet* v. *Dashwood*, (*Cases temp. Talbot*, 37.,) a bill was filed by the assignees of a bankrupt, charging the defendant's testator with lending on usury, and that agreements for that purpose were made and repeated from 1710 to 1724. It was a case of apparent extortion and oppression, and the accounts were ordered to be opened, and the demands reduced to moneys really lent, with lawful interest thereon. So, also, in *Vaughan* v. *Lloyd*, cited in 5 *Vesey*, 48., which was a case of principal and agent, and of abused influence and confidence by the agent. A variety of deeds and settled accounts were opened, though the accounts had been settled from time to time, and the defendant insisted on the benefit of those settlements. It appeared that several sums of money were charged improperly, and the accounts were impeached in several points, and the defendant was compelled to prove his accounts though he might suffer; for the Chancellor approved of the doctrine in *Piddock* v. *Brown*, (3 *P. Wms.* 288.,) that where there are manifest signs of fraud, the obligee ought to be put to the proof of actual payment, and if he suffered, it was owing to his own conduct. The same decision was made in *Watt* v. *Grove*, (2 *Schoale & Lefroy*, 492.,) which was, also, the case of an agent availing himself of the negligence and extravagance of his principal. Indeed, the taking advantage of a man's necessities is as wrong as taking advantage of his weakness. This is not the case of merely showing mistakes and omissions in a stated account, in which the party is allowed to do no more than surcharge and falsify. Appearances wear a more serious aspect, and the whole account ought to be opened from the beginning, as was done in *Vernon* v. *Vawdy*, (2 *Atk.* 119.,) after a period of 23 years. I do no more in this case, than has been repeatedly done in other cases which were not more oppressive in appearance.

I shall, accordingly, decree, in substance, as follows, viz. : " that the accounts between the parties be opened from the 29th of *November*, 1790; and that it be referred to a master

*1815.*

BARROW.
v.
RHINELAN-
DER.

to state an account ; and that, in doing it, the defendant be credited for all moneys loaned to *Prior*, or paid on his account, or received by *Prior*, belonging to him, between the 29th of *November*, 1790, and the 4th of *July*, 1801, with interest on the same, from the time the moneys were received, or paid, to the time of taking the account ; provided, that in stating such account, the master do make rests therein, at such times as it shall appear that the parties liquidated their accounts, and agreed that the interest then due should be considered as principal, and that the interest to be found due at the time of making such rests, and specially agreed to be paid in the particular case, be thereafter considered as principal. That, in taking the account, the master is not to admit, as evidence, any bond or obligation given by *Prior* to the defendant ; that the defendant is to be credited for wages for the time he served as clerk, at the rate of 500 dollars a year, with interest thereon, at the end of each year; that he is to be charged with all moneys received from *Prior*, or from his property, or debtors, before he became a bankrupt, or from his assignees since, and with all moneys paid on account of the defendant, with interest thereon, &c., and with all goods sold by *Prior* to the defendant, or taken by him, between the periods aforesaid, with interest thereon, from the time the same were payable by the custom of the store ; and with the principal sums due on all such securities taken by the defendant from *Prior*, without his permission, and of such securities as were assigned to him, and which he refused to deliver to *Prior* for collection, together with interest, &c. ; and that he be, also, charged with all moneys received on the securities assigned, with interest, &c. ; and with the principal and interest of such securities received from *Prior*, as have been lost by his negligence, default, or want of due diligence in collecting them. And it is further ordered, that the defendant be credited with the moneys paid for costs and charges of collection, or endeavouring to collect, the moneys due on such securities, and

which shall appear to have been reasonably expended, &c.; and, also, with the amount of such moneys as the defendant may have justly paid for taxes, and other necessary charges upon the *Population* shares, and the lands in the county of *Clinton*, with interest, &c.; and it is further ordered, that the defendant re-assign the *Inland Lock Navigation* shares, if he can, or that the master report the value thereof, &c.; and that he reconvey the lands in *Clinton* county, and the forty-four *Population* shares in *Pennsylvania*, if he can, or that the master report the value, &c.; and it is further ordered, that the master have power to compel the production of books and papers in possession of either party, and that he report, specially, any facts required by either party, and that the question of costs, and all further directions, be reserved.

1815.

BARROW
v.
RHINELAN-
DER.

Decree accordingly.

At the hearing of the cause,* *Emmet,* of counsel for the defendant, objected to the deposition of *Prior,* the bankrupt, on the ground of his interest, he not having released his right to the surplus of his estate.

*Boyd,* contra, insisted, that the objection came too late, the witness having been cross-examined by the defendant, before the examiner. He further offered to do away the objection, by proving, by a subscribing witness in court, the execution of a release by *Prior* to the assignees, dated the 29th of *March,* 1803, of all his *residuum* of interest. This offer was opposed, on the ground that there had been no previous notice of it.

THE CHANCELLOR directed the witness to be sworn. He observed that no objection was made to the competency of the witness until the argument was partly finished, and not until

*Sept. 28th.

Where, at the hearing of a cause, and after the argument had been finished in part, an objection was made to the competency of a witness, whose deposition, taken before an examiner, had been read, the court allowed the plaintiff to prove the execution of a release of the witness of all his interest, by the examination of a witness, *viva voce,* without any previous order or notice for that purpose.

Witness may be examined, *viva voce,* at the hearing, for a particular purpose, as to prove *exhibits* which had not, been proved before the examiner. But the *regular* way is to

serve a previous order for that purpose, or notice, on the opposite party, four days before the hearing.

the counsel for the defendant had even made use of the deposition of the witness. And no reason is assigned why the party wishes for delay and time, by requiring four days notice of this mode of proving the release. This court has frequently admitted the examination of a witness, *viva voce*, at the hearing, for such a specific purpose as to prove an *exhibit*, which had been neglected to be proved before the examiner. (1 *Har. Chan.* 594, 595.) The regular way would have been to have had a previous order for the purpose, served on the opposite party, four days before the hearing, so that the party might not be taken by surprise. But under the circumstances of this case, some special cause, at least, ought to be shown why such an order, or notice, as a substitute for it, should now be required. In strictness, the party may be considered as having waived his objection to the competency of *Prior's* deposition.

Witness examined.