THOMAS F. McDow, ADMINISTRATOR, *vs.* DANIEL W. BROWN, EXECUTOR.

Bill by the administrator of a deceased ward against the executor of the guardian, to open an account stated and settled between plaintiff and defendant, on the ground of mutual mistake in this, that in the settlement no account was taken of an estate in which the ward was entitled to a distributive share, and of which the deceased guardian was the administrator. The settlement was based upon the guardian's returns, and the defendant, in making it, had acted in entire good faith. Relief refused mainly on the grounds of want of proof that the guardian's returns were false, and because it appeared that the plaintiff possessed, at the time of the statement, substantial information of the facts alleged in his bill as the ground of relief.

The authorities reviewed and the principles stated upon which Courts of Equity give or refuse relief in suits to open or to surcharge and falsify stated accounts and accounts settled, where they are impeached on the ground of fraud or mistake.

BEFORE JOHNSON, CH., AT LANCASTER, JUNE, 1868.

The facts relating to the only point considered by the Supreme Court in this case are stated in the judgment of that Court.

The Circuit decree from which the appeal was taken is as follows:

JOHNSON, Ch. In the year 1851, John S. Cunningham died intestate, leaving as his heirs-at-law his widow Mary, one son, Robert Alfred Rinaldo, the child of the said Mary, and two daughters, to wit: Isabella, who, since his death, has intermarried with Thomas F. McDow, and Nancy, the children of a former marriage. At June Term of this Court, 1854, Mary Cunningham was appointed the guardian of the estate of her infant son; and in the early part

of May, 1855, she intermarried with Dixon Barnes. And at June Term of this Court, 1855, Dixon Barnes was appointed the guardian of the said R. A. R. Cunningham. On the 12th day of September, 1855, Mary Barnes died intestate, leaving her husband and son her sole heirs-at-law. Soon after her death, Dixon Barnes took out letters of administration upon her estate, and received large amounts from the administrators of the estate of the late John S. Cunningham, and, perhaps, from other sources, both on account of the estate of Mary Barnes and that of her infant son.

In September, 1862, Dixon Barnes died from wounds received in the battle of Sharpsburg, leaving, at the time of his death, a last will and testament, in which Daniel W. Brown and James H. Witherspoon were appointed the executors of the same, who, soon afterwards, proved the same, and assumed upon themselves the burthen of its execution. In 1865, James H. Witherspoon died intestate.

In the year 1865, Robert A. R. Cunningham, being still a minor, died intestate, and on the 25th of October, of the same year, letters of administration on his estate were granted to Thomas F. McDow, whose wife is the sole heir of his estate. In February, 1865, the army of General Sherman passed through Lancaster District, and all the papers belonging to the Ordinary's office were destroyed, and all the papers connected with Dixon Barnes' administration of the estate of Mary Barnes, except a single memorandum, were sent off for safe keeping, and were either destroyed or misplaced, so that they have never been recovered.

James H. Witherspoon, one of the executors of the will of Dixon Barnes, who had been for many years Ordinary and Commissioner in Equity, and who was regarded as one of the very best Commissioners in the State, made out a settlement between the estate of his testator and his ward; and, after his death, two very competent solicitors were employed to make out the statement; and they did it, after much labor, upon the basis of that of J. H. Witherspoon; and, after it was completed, the following receipt was signed by the representatives of both estates, to wit: "We, the undersigned, (D. W. Brown, surviving executor of D. Barnes, deceased, who was the guardian of R. A. R. Cunningham, deceased, and Thomas F. McDow, administrator of said R. A. R. Cunningham, deceased,) have settled the matters of account between us according to the statement of accounts exhibited on this and the four preceding sheets of paper, marked settlement sheets 1, 2, 3 and 4, which said settlement sheets,

with this sheet, comprise the entire statement of accounts and settlement between us. Thomas F. McDow, administrator as aforesaid, hereby acknowledges the receipt of thirty-nine thousand two hundred and twenty-seven dollars and thirty-four cents ($39,227.34), and he hereby relieves the said Brown, surviving executor as aforesaid, from further accounting and responsibility, and especially from liability to pay any claims against the estate of said R. A. R. Cunningham ; said McDow relieves said Brown from all liability to the estate of J. H. Witherspoon, deceased, executor of said D. Barnes, on account of payments (if any) legally made by J. H. Witherspoon in his lifetime for the said R. A. R. Cunningham or his estate, which have not been allowed in this settlement, and holds himself responsible to the estate of said Witherspoon for the same on equality of partition of estate of Nannie B. Cureton, deceased. T. F. McDow and wife, Isabella L., were decreed to pay said R. A. R. Cunningham twenty-two hundred and fifty dollars, with interest from 11th January, 1858, which they have not done ; this amount was never received by D. Barnes in his lifetime, nor by his executors since his death, and said McDow hereby relieves said estate of D. Barnes from all liability therefor. The undersigned hereby aver that this is intended as a full, final and complete settlement."

(Signed)                 "DANIEL W. BROWN,
                          "THOMAS F. McDOW.
" Executed in duplicate in presence of:
(Signed)              " R. E. ALLISON,
                   "JOHN D. WYLIE.
"LANCASTER C. H., S. C., January 1, 1866."

In about six weeks after this receipt was executed, T. F. McDow found, amongst the papers of estate Wm. C. Cunningham, who was one of the administrators of the estate of John S. Cunningham, a number of receipts of Dixon Barnes for large amounts which he had received as the administrator of the estate of Mary Barnes, which had, in no way, entered into the statement made of the settlement between the estate of D. Barnes and that of R. A. R. Cunningham, although the estate of the latter was entitled to two-thirds of the same. And on the 7th of May, 1866, the bill, in this case, was filed for the purpose of opening the settlement on the ground of this mistake. The defendant pleads, in bar, the settlement of accounts between the parties after full investigation ; and, also, that

the estate of Mary Barnes was much embarrassed with debt at the time of her marriage with Dixon Barnes; and that his payments, as administrator, amounted to as much or more than his receipts; and that, for that reason, no part of such receipts had ever been carried into the guardianship accounts of D. Barnes; and that, for the same reason, J. H. Witherspoon had ignored the receipts in the statements made by him.

The plea in bar cannot, under our decisions, be sustained, for, so far as the evidence reveals the facts, there was mistake; and it is ordered and adjudged that the same be overruled.

For the purpose of expediting the settlement of the case, the parties submitted the accounting to the Commissioner, and he charged the estate of Barnes with the amount stated in the bill to have been received by him on account of the estate of Mary Barnes gave the estate of Mary Barnes credit for a larger amount than he had received.   To this report various exceptions were filed by the complainant, mostly on the ground that the evidence supporting the credits was of such an uncertain character that it could not be relied upon, and, ordinarily, the evidence would be incompetent from the fact that evidence of a higher character could be procured; but, in this case, after the destruction of all the records in the Ordinary's office, and the loss of all the papers of D. Barnes relating to the estate of his intestate, and after the death of so many parties, who knew most about the transactions of D. Barnes connected with the estate, I am disposed to lend a willing ear to the evidence, such as it is, feeling that there is no danger of thereby doing more than justice to the estate of D. Barnes.   For the reasons assigned by the Commissioner in his original report and in the report on exceptions, I overrule all the exceptions except the twelfth, and the thirteenth so far as the same may be modified by sustaining the 12th exception.

It is ordered and decreed that the complainant's 12th exception be sustained, and that the 13th exception be partially sustained as above indicated, and that the reports of the Commissioner, in all other respects, be confirmed and made the judgment of the Court.

It is, also, ordered and decreed that the estates, represented by the respective parties, do pay their own costs.

The defendant appealed, and now moved this Court to reverse the decree on the ground, *inter alia*, that the plea in bar should have been sustained, and that His Honor the Chancellor erred in overruling it.

The complainant also appealed, but his grounds of appeal were not considered by the Court.

*Allison,* for defendant.
*Wylie,* contra.

Sept. 22, 1870.   The opinion of the Court was delivered by

WILLARD, A. J.   Complainant, as administrator of R. A. R. Cunningham, deceased, seeks to open a guardian's account, stated and settled between himself and the defendant, Brown, sole surviving executor of D. Barnes, the guardian of complainant's intestate. The accounting took place January 1, 1866, and covered a period of ten years then last past.   A balance was ascertained in favor of the ward's estate.   The results were reduced to writing, and the balance was stated and payment made by the defendant to the complainant, and receipts and discharges exchanged between them, expressing the intention of the parties that the accounting should be final and conclusive.   This bill was filed shortly afterwards, alleging that the defendant did not therein account for the interest of the ward in the estate of his deceased mother, Mary Barnes, that came into the hands of the testator of the defendant as administrator of that estate, and in which the ward had a two-thirds interest as distributee.   The bill charges that the settlement was based on, and prepared from, information afforded by the returns of Barnes, as guardian, which were produced by the defendant, who claimed and insisted, throughout the accounting and settlement, that the said guardian had therein charged himself with everything with which he was properly chargeable as guardian; that the complainant made the settlement believing this statement to be true.   The prayer is, that the settled account may be opened, and that the defendant account for the distributive share of the ward in the estate of his mother.

The defendant, Brown, answered, admitting the general facts set forth in the bill, and stating that he does not know what Barnes received as the estate of Mrs. Barnes; that, so far as he knows, the account contained all sums of money with which Barnes was properly chargeable; that the account was prepared with great care by the aid of experienced solicitors, one of whom represented the complainant, and the other the defendant.   He admits that, during the preparation of the accounts, he declared that the returns contained, as far as he knew, or believed, a correct statement of all sums of

money properly chargeable to the guardian. He reiterates this belief as based upon the character and business habits of Barnes, and denies that Barnes designedly or fraudulently misstated the accounts, and affirms that he does not believe that he did so through negligence or carelessness. That nothing was said in the settlement, by the complainant or any one else, of the fact that Barnes had received large sums of money, to two-thirds of which R. A. R. Cunningham was entitled, and which were not charged in his annual returns as guardian. He further adds that he, defendant, knew nothing of the matter. He denies that he pretended to any knowledge, except that derived from the returns as guardian, and alleges that at that time the complainant had knowledge of such facts. The defendant does not admit that the amount acknowledged in the returns of the guardian did not embrace items received on account of Mrs. Barnes' estate. He further states that Mrs. Barnes was the widow of John S. Cunningham when she intermarried with Barnes, and lived but a few months after her second marriage, and submits it as very probable that previously to her said marriage she owed debts, and that, from the short time she lived, they were not discharged and paid until after her death. He further submits, that whatever debts she owed before her marriage with Barnes, and whatever liabilities then existed against her, which were not satisfied and paid by Barnes during her marriage, survived against her estate, and are properly chargeable thereon.

The answer accounts for the absence from the Ordinary's office of any evidence whatever in relation to the administration of the estate of Mrs. Barnes, by setting forth the destruction of public records during the late war. He also alleges the destruction, from the same cause, of the private papers of Barnes in relation to the estate of his deceased wife. He states that "he has not in his possession any papers or documents connected with said administration, and knows not where to look for evidence of the receipts and disbursements of said administration." He alleges that J. H. Witherspoon, deceased, co-executor of Barnes' estate, who had, during his lifetime, attended principally to the accounts and business of the estate, and who was familiar with the business of Barnes, shortly before his death, with a view to a final settlement, prepared a statement of the accounts, and therein no mention is made of the sums now claimed by the complainant. The answer further states as follows : " Respondent submits it as probable and reasonable to believe that Barnes accounted properly for the said administration; that what-

ever sums of money may have been received by him as administrator of his wife, (if, indeed, any have been received,) were applied to the satisfaction and payment of her debts and liabilities." The defendant objects to the bill of complaint, that it seeks to surcharge and falsify the account stated and settled, but does not point out and specify in what particulars there is error, but that it should set forth each specific sum so received by the administrator, and when it was so received. He also pleads, in bar, the account stated, and a release and discharge under seal.

A reference was ordered to take testimony and state the accounts of Barnes as administrator of the personal estate of Mrs. Barnes. Extended evidence was taken by the Commissioner, who reported a statement of the administration account, showing a balance of disbursements over receipts amounting to $1,106.10. Complainant excepted to various items of the account as stated by the Commissioner, and a report was made on these exceptions. At June Term, 1868, Ch. Johnson heard the case upon the pleadings and proofs, and upon the exceptions to the Commissioner's report. The Circuit decree adjudged that the plea in bar should be overruled upon the ground of mistake, and overruled all the complainant's exceptions, except the twelfth, which was sustained, and modified the report as to the matters embraced in the thirteenth exception. Both parties have excepted to the decree.

The first matter to be considered is that portion of the decree that adjudges the insufficiency of the plea in bar on the ground of mistake. The defendant's exceptions raise two propositions on this subject; first, that the plea in bar should have been sustained for the want in the bill of a proper specification of the errors in the settlement as to time, place and amount; and, second, that the finding of the fact of a mistake is unsupported by the pleadings and evidence. It appears that the basis adopted by the parties for the purposes of the accounting was the returns of the guardian. The complainant alleges that the defendant represented that these returns were correct. The defendant substantially admits this allegation, adding that he represented their truth only according to his belief, and that he believed, and now believes them to be true and just. The question, then, arises, were the returns true? If untrue, what effect would that have upon the settled account?

No fraud is alleged, proven, or to be inferred, from the character of the transactions or the testimony adduced in regard to them, either as affecting the mutual dealings of the complainant and de-

fendant, or as affecting the conduct of the guardian in relation to his ward's interests. If the guardian's returns are defective in not giving credits on account of the ward's interest in his mother's estate, still the facts and circumstances attending such omission are not sufficiently presented to warrant the inference of a fraudulent motive on the part of the guardian. The defendant states, in his answer, that he knew nothing at the time of the settlement in relation to the transactions to which it is now sought to extend the accounting, and, further, that nothing was said during the accounting, which occupied a period of many weeks, on the subject of the guardian's liability for moneys received on account of his ward's interest in his mother's estate. So far as the fairness of the conduct of the defendant is involved, no ground is presented for disturbing the account. If such ground exists at all, it must be found in the fact that the complainant was misled and deceived in assuming the correctness of the guardian's returns. Both complainant and defendant stood upon an equal footing in their mutual dealings. Both were representatives of others, without, so far as appears, direct personal knowledge as to the transactions of the guardian. The complainant, as appears from the pleadings and proofs, actually possessed the best information in regard to the credits alleged to have been improperly excluded from the account. The defendant's statement of entire want of information on this subject, set forth in his answer, stands uncontradicted. Complainant was a party to a suit in which an account was taken in 1858, that disclosed, in substance, the state of facts set forth in the bill as the ground of its equity. The bill alleges that the guardian did not charge himself, in his returns, with moneys received from W. C. Cunningham, the administrator of the estate of J. S. Cunningham, on account of Mrs. Barnes, the ward being entitled to two-thirds of her distributable estate. It puts the amount received, at $11,477.37. The accounting, in 1858, was between W. C. Cunningham, as administrator, and the distributees of J. S. Cunningham's estate, among whom were the complainant and wife. It was then ascertained that Barnes, as administrator of Mrs. Barnes, had received $9,779.92, being $168.69 less than the amount payable to him. It appeared, also, that complainant and wife had received more than their distributive share, and the result of the accounting was that, among other things, complainant and wife were brought in debt to the estate in an amount covering their rateable proportion of the sum of $168.69, remaining unpaid to Barnes, as administrator of Mrs. Barnes. Although

complainant did not then stand in the character of administrator, in which he presents this bill, yet his direct interest in the accounting of 1858 is all that need be looked to in order to ascertain how far he is chargeable, at the accounting with the defendant, in 1866, with knowledge of the facts set forth by him as constituting the equity of his present demand. It is necessarily to be inferred, from the foregoing facts, that eight years before the filing of the present bill the complainant was in a position to make the averments set forth in his bill. It becomes important, then, to inquire whether, at the time of stating the account, he had these facts in mind. He has neither alleged nor proven, though his own testimony could be employed for that purpose, that he had forgotten, or lost sight of, these facts. In fact, the inference from the bill is rather that he never knew of their existence, though no such statement is made in express terms. If ignorance, or forgetfulness of any fact, is material as a ground of equity, it must be alleged and proven, like any other fact, nor is making such proof attended with either theoretical or practical difficulty, when the oath of the party may be resorted to as proof. In the absence of any allegation of either ignorance or forgetfulness, it must be assumed that the complainant knew, at the settlement, that large sums of money had, theretofore, been received by Barnes, as administrator of Mrs. Barnes, as to which he was liable to account to his ward. It must also be assumed, as established, that the defendant was ignorant of such facts.

It is proper to remark, in this connection, that it is in proof that certain receipts given by Barnes, as administrator of Mrs. Barnes, to W. C. Cunningham, in acknowledgment of the amounts paid to the former by the latter, as administrator of J. S. Cunningham, in full of Mrs. Barnes' interest in the estate of J. S. C., came into the hands of the complainant shortly after the accounting of 1866; but, as these receipts exhibited nothing of importance beyond what was spread out on the record of the accounting of 1858, this evidence has no tendency to establish previous want of knowledge, on the part of the complainant, of the facts relied on in this bill.

In view, then, of the state of knowledge possessed by the complainant, it is important to inquire whether he was improperly influenced by the guardian's returns, in assenting to the settlement of the guardian's account, and discharging his personal representatives from further liability to account. This involves the consideration of the question of fact, whether the guardian's returns were

false or incorrect in fact. They allow no credit to the ward, on account of his distributable share of his mother's estate. There is no evidence that the administration of Mrs. Barnes' estate was closed during the life of her administrator. Mrs. Barnes died in Sept., 1855, and letters of administration were immediately taken out by Barnes. The funds received by the administrator from the estate of J. S. Cunningham appear to have been paid into his hands in 1856, with the exception of a small balance paid after the accounting of 1858. The extent to which Mrs. Barnes' estate was indebted can only be ascertained conjecturally. This is due to the death of parties having personal knowledge of the facts, the loss and destruction of books and papers during the war, and the great lapse of time since the death of Mrs. Barnes. The parties were enabled to give proof of comparatively a small amount of the probable indebtedness, and also to introduce a memorandum, in the handwriting of Barnes, stating certain amounts paid by him on account of Mrs. Barnes' estate. This memorandum is not a regularly stated account, and is without date, nor is the time to which it relates ascertained. Evidence was offered tending to show the probability of a large indebtedness on the part of Mrs. Barnes of which no specific proof appears to have been attainable. The Commissioner was so much impressed with the probability of such indebtedness that he stated in his account a conjectural disbursement of $3,000, evidently arrived at by arbitrating the difficulty arising from want of evidence upon opinion and conjecture. The decree disallowed this item, but states no reason for so doing. It is not necessarily to be inferred that the Chancellor entertained a different opinion from the Commissioner as to the probability of a large unproved indebtedness, but he probably refused to allow his decree to stand on purely conjectural grounds.

It is clear, upon the whole case, that it is impracticable to make a statement of the accounts of the administration of the estate of Mrs. Barnes with reasonable approximation to the truth.

The force of the testimony must, therefore, greatly depend on the *onus probandi*, which will be hereafter considered. Assuming, at the present time, that the burden of proof rests on the complainant of showing that the guardian's returns are untrue, and it is evident that there is a failure of clear and palpable proof to show that, after the payment of the debts of Mrs. Barnes, there remained a distributable estate, which, to the extent of two-thirds, ought to have been credited on the guardian's returns. On the opposite assump-

tion that the defendant, as the representative of Barnes, is bound to account for his administration of Mrs. Barnes' estate, it is equally evident that full justice cannot be done to the parties to such accounting, for want of distinct evidence as to the transactions embraced in such accounting.

It becomes necessary at this stage to enquire into the legal and equitable rights and standing of the parties under the account stated and settled.

The present question concerns the opening of a settled account. An account is deemed settled when payment has been made upon it. When there has been an adjustment and balance struck, but no payment made, it is treated as stated merely.—Story Eq. Jur., § 798. Four things are essential to a settled account: there must be a balance ascertained; it must be reduced to writing; it must be final and conclusive, and payment must be made.—Ib., § 798. The taking of security for the balance is equivalent to payment.—Ib., § 800; *Pratt* vs. *Weyman*, 1 McC. Ch., 156. It is manifest that, in disturbing a settled account, the Court acts with a greater circumspection than when dealing with a mere stated account, for the former is a bar, at law, to a demand for a general accounting that may be made available by a plea of accord and satisfaction, while an account merely stated is, at most, evidence of the true state of the accounts. The effect of this distinction upon the relief in cases of this character is not as clearly drawn in the cases as might have been anticipated. In an account settled in the strict sense, that is, by actual payment of the balance ascertained, the original cause of action is merged and lost, and the parties stand upon the ground of an act having a conclusive legal effect upon their antecedent relations. It is, therefore, clear that the authority of equity to disturb such a settlement depends upon the general doctrine governing those Courts in granting relief by setting aside the legal force and effect of the act or contract of the party. The relief granted in the case of a settled account extends either to opening the account and remitting the parties to the position they occupied before the settlement, or to allowing the party contesting to surcharge and falsify it. When fraud exists the Court will open the whole account.—1 Dan. Ch. Pr., 691.; Story's Eq. Jur., § 529; Fonbl. Eq., 15. Story (Eq. J., § 521) lays down the rule in broader terms, as follows: "For gross fraud, a gross mistake, or undue advantage, or imposition, made palpable to the Court, it will direct the whole account to be opened and taken *de novo*." If errors and

mistakes alone exist, the party will be permitted to surcharge and falsify.—1 Dan. Ch. Pr., 691; Fonbl. Eq., 15. In this case the opposite party will have leave also to surcharge and falsify (1 Dan. Ch. Pr., 693), and the *onus probandi* rests on the party surcharging and falsifying.—Ib., 692; Story Eq. Jur., § 525.

The general rule applicable to the relief afforded by equity, as against settled accounts, has not been stated in uniform terms by the various authorities. It would be difficult to reconcile the expressions that have been employed to define the limits of this jurisdiction, unless the distinction between stated and settled accounts is carefully observed. Story states that if there has been "any mistake, or omission, or accident, or fraud, or undue advantage, by which the account stated is, in truth, vitiated, and the balance is incorrectly fixed, a Court of Equity will not suffer it to be conclusive upon the parties, but will allow it to be re-opened and re-examined."—Story Eq. Jur., § 521. Again, speaking of a settled account, he says, that it is deemed conclusive, unless some fraud, mistake, omission or inaccuracy is shown.—Ib., § 527.

Fonblanque states as follows: "But the interference of Courts of Equity is peculiarly effective in correcting errors, or detecting fraud in accounts relied upon as stated and settled, by allowing the plaintiff, in the case of specific errors alleged and proved, to surcharge and falsify, and, in the case of fraud, to open the whole account." Whether the rule thus broadly laid down by such eminent authorities is applicable, without qualification, to the case of an account merely stated, is not a question for decision at the present time; but a review of the cases will make it clear that, in its application to settled accounts, it must be considered as subject, at least, to the qualifications that arise out of the distinction between cases between parties standing in terms of equality, and those between parties whose mutual relations imply personal trust and confidence as to the matter of the accounting.

A reference to the authorities cited by Fonblanque, in support of the rule stated by him, will throw light on this subject. *Vernon* vs. *Vawdry* (2 Atk., 119,) was a case of a stated account merely, and what is there said of " mistakes and omissions " is in terms applied to a " stated account." *Chambers* vs. *Golden* (5 Ves., 834,) was a case between principal and agent, and the duty of accounting was affected by confidential relations existing between the parties.

It will be observed, from a review of the decided cases, that a much broader application of this kind of relief is allowed where the

party against whom the relief is sought was under the obligation of personal trust and confidence to render a full and fair account. In *Matthews* vs. *Wallwyn*, 4 Ves., 125, a settled account rendered by an attorney was opened, on the ground that it was the business of the attorney to keep his clients' accounts, and that the omission of credits was not a due- discharge of that duty. In *Beaumont* vs. *Boultbee*, 5 Ves., 485, the effect of a confidential relation is considered with reference to *laches* on the part of the employer in seeking to open a settled account. The Lord Chancellor says that he did not know a case in which a confidential agent and steward could impute neglect to his employer in this respect. *Wharton* vs. *May*, 5 Ves., 27, was a case of confidential relations, but was determined on the ground of fraud. *Brownell* vs. *Brownell*, 2 Bro. C. C., 62, was a case of a trustee who had abused the confidence of his *cestui que trust*. Although the lapse of ten years inclined the Court to refuse to open the whole account, yet the defendant was admitted to surcharge and falsify. The account in that case had been settled solely on the representations of the trustee that it was correct. *Chambers* vs. *Golden*, 5 Ves., 834, was the case of a disbursing and accounting agent, and the account was opened to correct an over- charge of commissions. *Vernon* vs. *Vawdry*, 2 Atk., 119, was a case of fraud, and what is said about opening "stated accounts" for "mistakes and omissions" is employed to distinguish those cases in which the party is confined to merely surcharging and falsifying from those involving "fraud and imposition," where the whole ac- count is opened. It evidently was not the intention of the Court to state the limitations upon which stated accounts are opened upon proof of "mistakes and omissions." In *Pratt* vs. *Weyman*, 1 McC. Ch., 156, a bill to correct mistakes in a settled account ren- dered by executors was dismissed, on the ground that the defendant had to rely on a statement of facts supplied by the complainant. In that case, the complainant, who was a debtor of the defendant's testator, was under no general obligation to the defendant, involv- ing trust and confidence in respect to the information communi- cated for the purpose of the settlement, yet having assumed to per- form that duty, he was under an obligation to perform it fully and fairly. This case was within the reason of the rule affecting con- fidential relations. *Chappedelaine* vs. *Dechenaux*, 4 Cranch., 306, was a case of confidential agency. In *Barrow* vs. *Rhinelander*, 1 Johns. Ch., 550, Ch. Kent opened an account rendered by a con- fidential agent, on the ground of abused confidence.

It·will be observed that the cases in which the terms of the rule of equity governing the relief afforded against stated or settled accounts are stated, are generally those where a stated account has been rendered by one bound to render a full and fair account under an obligation imposed by personal trust and confidence, either resulting from the general relations of the parties or from an assumed undertaking of the party rendering the account to make it full and fair. The grounds on which relief has been afforded in such cases are reducible to fraud, imposition or mistake. Ch. Dargan, in *Murrel* vs. *Murrel*, 2 Strob. Eq., 148, states them as "fraud, misrepresentation, concealment or mistake of facts;" but misrepresentation and concealment on the part of one bound by trust and confidence may well be referred to the single expression, imposition.

It is a general rule of equity that an act done, or contract made, either under a mistake or ignorance of a material fact, is voidable and relievable in equity.—Story Eq. Ju., § 146. Story defines a mistake as follows: "It is some unintentional act, or omission, or error arising from ignorance, surprise, imposition or misplaced confidence."—Story Eq. Ju., § 110. Two classes of cases arise under this rule, thus defined: First, when a mistake has arisen without the fault of either of the parties, in which case relief is granted only where the mistake is mutual.—Story Eq. Ju., §§ 142, 147, Redfield's Ed. Second, where the mistake has arisen through the wrongful act or omission of the party against whom the relief is sought; in which case relief is granted when it appears that an innocent party, induced by mistake as to some material matter of fact, caused by fraud, imposition or breach of trust or confidence on the part of the party against whom the relief is sought, has done an act, or made a contract to the injury of his rights, and seeks in due time to be relieved therefrom. If it appears that the party·alleging mistake might, by reasonable diligence, have obtained information as to the matter of the mistake, relief will well be denied.—Story Eq. Ju., § 146. This rule is laid down very clearly by Ch. Dargan, in *Murrel* vs. *Murrel*, 2 Strob. Eq., 148, as follows: "A party fully competent to protect himself, under no disability, advised as to all circumstances by which he may be saved his rights, or in a situation where he might, by due diligence, be so advised, not over-reached by fraud, concealment or misrepresentation, nor the victim of a mistake against which prudence might have guarded, has no right to call the Courts of justice to protect him."

The relief granted by way of opening settled accounts flows from

the terms of the rule heretofore stated as laid down by Story and the other authorities. An important question has arisen as to when a fact is to be regarded as material to the accounting within the terms of the rule above stated. In reference to the rule, in its general appli- cation, Story lays down the following tests of materiality: that it must be material to the " act or contract," it must be " essential " in its character, and " an efficient cause of its concoction."—Story, Eq. Jur., § 141. In other words, the truth of the fact, in respect of which mistake is alleged, must be a material part of the consid- eration on which the act or obligation is based which is sought to be set aside. If, therefore, the parties intended the settlement as a composition or compromise of a doubtful or disputed right, the Court will not, on the sole ground of mistake, set it aside.—*Durham* vs. *Wadlington*, 2 Strob. Eq., 258 ; *Keitt* vs. *Andrews*, 4 Rich. Eq., 349. For it is obvious that in that case, inasmuch as the parties did not seek to conform their settlement to the exact facts of the case, the truth of no one fact could be regarded as vital to the con- sideration by which they were moved. For the same reason, if, for want of information, the parties mutually assumed the existence of certain facts and understandingly dispensed with further inquiry as to their actual truth, the Court will not interfere, if this assumption turns out to be erroneous. (See *Pratt* vs. *Weyman*, 1 McC. Ch., 156.) In the case last supposed, as well as in the one immediately preced- ing it, something other than the actual truth of the fact, supposed to be known, influenced the minds of the parties in reference to the con- sideration of their act or contract.

On the other hand, when the parties look to the actual state of facts, and acting from the supposition mutually entertained, that they are possessed of the truth of such state of facts, make a set- tlement of their accounts, relief will be granted, if it be made to appear that they were mistaken in that respect as to a material fact. When one intrusted with the control or management of a fund in a confidential or fiduciary capacity, and having, or sup- posed to have, either exclusive or better information of the matters of account relating thereto than the person beneficially entitled to such fund, renders an account thereof to such person, and the account is accepted and settlement made upon it, it will be presumed that the settlement was made on the faith that the account is full, fair and accurate. That such assumption must be regarded as entering into the consideration is in accordance with what was said by Ch. Harper in reference to the validity of a release given on the settle-

ment of accounts.— *Gist* vs. *Gist*, Bail. Eq., 343. He says of the
adjustment, that the fairness of the accounts is of the essence of the
consideration. If they are not fair, the consideration is not fair,
and the instrument based on such consideration is void. The ex-
pression "fairness," as here used, may have relation to the good
faith of the transactions, rather than the accuracy of the accounts
and their strict conformity to the truth of the transactions repre-
sented by them; but the idea is still enforced that what the party
accepting the account rendered has a right to expect must be re-
garded as entering into the consideration, and, in the case of a con-
fidential or fiduciary agent, accuracy, as well as good faith, may be
reasonably expected, for both are embraced within the duty of ac-
counting under such circumstances.

. If the accounts rendered by a confidential or fiduciary agent are
incorrect, it must result either from imposition or mutual mistake;
for, if the agent is aware of the inaccuracy and does not disclose
the fact, he must be regarded as imposing on the confidence of the
party; if not aware of such incorrectness, it is a clear case of mutual
mistake of a material character.

It is thus made clear that, whatever difference exists in the con-
clusiveness of an accounting, whether by parties between whom a
confidential or fiduciary relation exists, or between parties acting
exclusively in their own interests, does not result from the applica-
tion of a different rule of equitable relief, but from the nature
of the presumptions that arise from the relations of the parties in
the respective cases. Having gained a correct view of the ground
on which this branch of equity relief rests, the decided cases will
be easily harmonized together. In *McCrae* vs. *Hollis*, 4 DeS. Eq.,
122, the maker and payee of a note, in the course of a settlement,
mutually mistook the amount of the note and also the amount of
the payments upon it, and Chancellor DeSaussure opened the settle-
ment. In *Porter* vs. *Cain*, McM. Eq., 84, the parties, in settling an
administrator's account, did not take into consideration interest on
annual balance. If there was any mistake in the case, it must
have been as to the right of the complainant to such allowance of
interest; for the facts were all spread out on the face of the ac-
count. It might well be that this charge of interest was regarded
by the parties as inequitable, as it would have been if the adminis-
trator had neither derived benefit from the use of the funds, nor
neglected his duty with regard to investment. The case went off
on the ground that neither fraud nor mistake were sufficiently

alleged or proven. In *Murrel* vs. *Murrel*, 2 Strob. Eq., 148, the bill, though in form an application to open an administrator's stated account, had for its real object the opening of a composition made among distributees, the administrator having based his account on such composition. The claim was for the distribution of a certain sum set apart by the agreement of the parties for a specific use, namely, the support of an aged mother, and also for a re-statement of the account in reference to advances alleged to have been made. The Court refused to open the settlement, as there was neither fraud, misrepresentation, concealment, nor mistake of facts established:

In *Pratt* vs. *Weyman*, 1 McC. Ch., 156, the Court refused to open an account for errors in favor of the party from whom the information on which the account was settled was derived. Whether the complainant was regarded as at fault within the principles heretofore stated from *Murrel* vs. *Murrel* does not distinctly appear, though it may be fairly presumed. It is said, in this case, that when error is apparent on the face of the account, the Court will not hesitate to relieve. This remark should be understood as referring to errors of the class that the parties are presumed not to have intended such as errors, or statements, or computation, as in *McCrae* vs. *Hollis*, and *Chappedelaine* vs. *Dechenaux*, 4 Cranch, 306.

*Frazer* vs. *Hext* was a case where a distributee settled on the faith of the representations of the administrator that his account rendered was correct, and would have been a case for relief, had it been sought in due time.

In *Durham* vs. *Wadlington* (2 Strob. Eq., 258,) an attempt was made to set aside an agreement by way of compromise, and the Court refused to interfere with the compromise made by the parties.

*Gist* vs. *Gist* (Bail. Eq., 343,) was a clear case of mutual mistake of fact. The devisees settled among themselves, on the erroneous supposition of a certain debt being due by the estate. The account was opened. Ch. Harper, whose opinion was affirmed on appeal, says: "This was not a case of speculation or compromise. The parties did not agree to take the estate in South Carolina, whatever it might be, and pay the debts, whatever they might amount to."

In *Garner* vs. *Garner* (1 DeS. Eq., 437,) relief was granted against a mutual mistake of the parties, as to their legal rights, induced by erroneous professional advice. (See *Lawrence* vs. *Beaubien*, 2 Bail., 623.)

*Alexander* vs. *Muirhead* (2 DeS. Eq., 162,) was a bill to set aside

an agreement, on the ground of mistake; but the question does not appear to have been adjudicated on the merits.

*Zylstra* vs. *Keith* (2 DeS. Eq., 142,) and *Lowndes* vs. *Chisholm* (2 McC. Ch., 455,) did not necessarily depend on the power of equity to grant affirmative relief on a bill alleging mistake, but upon the principle that when parties are before a Court of Equity seeking equity, the Court will look into transactions callateral to, and dependent upon, the main subject of inquiry, in order that full justice may be done.

In *Matthews* vs. *Walwyn,* (4 Ves., 155,) relief was granted in a case of mistake, based upon the duty of an attorney to render full and fair accounts.

In *Beaumont* vs. *Boultbee,* (5 Ves , 455,) a settled account was opened upon the distinction between cases involving confidential relations and ordinary cases, such as between landlord and tenant.

In *Chambers* vs. *Golden,* (5 Ves., 834,) the party was permitted to surcharge and falsify a settled account rendered by a confidential agent, on the ground that certain commissions were improperly charged.

*Chappedelaine* vs. *Dechenaux,* (4 Cranch, 306,) though between the representatives of the original parties, yet it sought to open a settled account stated between the original parties, on the ground of fraud and error. Relief was granted upon a principle distinctly stated by Chief Justice Marshall. He says: "But, if palpable error be shown which cannot be misunderstood, the settlement must so far be considered as made upon absolute mistake or imposition, and ought not to be obligatory on the injured party or his representatives, because such intent cannot be supposed to have received his assent. The whole labor of proof lies upon the party objecting to the account, and errors which he does not plainly establish cannot be supposed to exist." This was said of transactions between a confidential agent and his principal, and fully supports the proposition heretofore advanced in regard to the presumptions arising from errors found in an account rendered by such agent.

In *Hunt* vs. *Rousmanier,* 8 Wheat., 174, relief was allowed on the ground of a mutual mistake as to the effect of an arrangement intended to furnish security for a debt, induced by the erroneous advice of counsel. In *Barrow* vs. *Rhinelander,* 1 John's Ch., 556, an account rendered by a confidential agent was opened on the ground of abuse of confidence amounting to imposition.

In *Wild* vs. *Jenkins,* 4 Paige, 481, as the parties did not stand in

confidential relations as it regards the accounting, Walworth, Ch., did not allow them the benefit of the presumption that errors were not assented to, but held that the error or mistake alleged should be supported by clear and conclusive evidence.

As a question of pleading is made, it will be proper to look at the settled rule of pleadings in these cases. The bill must set forth the fraud or mistake so that the defendant may answer it.—*Porter* vs. *Cain*, McM. Eq., 84. General charges of fraud or mistake are insufficient—*Frazer* vs. *Hext*, 2 Strob. Eq., 250; *Bulloch* vs. *Boyd*, 2 Edwards' Ch. R., N. Y., 293; but the ground of the relief sought must be specifically stated.—*Murrel* vs. *Murrel*, 2 Strob. Eq., 148; Story Eq. Jur., § 800; and if errors in the account are alleged they must be distinctly proved as alleged—*Pratt* vs. *Weyman*, 1 McC. Ch., 156; *Wilde* vs. *Jenkins*, 4 Paige, 481. If specific errors or fraud are charged in the bill they must be denied by the averments in the pleas as well as by answer in support of the plea— 1 Dan. Ch. Pr., 691; Story Eq. Jur., § 796; and must allege that the account is just and true, to the best of his knowledge and belief— 1 Dan. Ch. Pr. 691; Story Eq. Jur., § 802. If a release under seal is pleaded the consideration must be set forth, (Story Eq. Jur., § 797); but if not under seal it must be pleaded as an account stated. If a release is pleaded to a bill charging fraud, surprise, or inadequacy of consideration, this averment must be met in the body of the plea, and it must be supported by an answer.—Story Eq. Jur., § 796. When the existence of errors is admitted in the answer relief will be granted, though not necessarily upon a mere parol admission.—1 Dan. Ch. Pr., 693. If the charges of the bill are fully and substantially denied by the answer, the account will not be opened on the averments of the bill alone.—*Pratt* vs. *Weyman*, 1 McC. Ch., 156. When a bill is brought for a general account, and the defendant sets forth a stated one, the plaintiff must amend his bill and set forth the specific ground of opening the settlement for surcharging and falsifying it.—*Dawson* vs. *Dawson*, 1 Atk., 1. The *onus probandi* rests on the party contesting the account. The proof of fraud or error must be strong and conclusive.—*Wilde* vs. *Jenkins*, 4 Paige, 481. Doubtful and probable testimony will not be considered sufficient.—*Chappedelaine* vs. *Dechenaux*, 4 Cranch, 306; *Wilde* vs. *Jenkins*, 4 Paige, 495.

The first exception relied upon by the defendants is, that the bill does not contain a specification of errors in the account stated sufficient to open a settled account. If the defendant had undertaken,

8A

in behalf of the guardian, to account for the administration of Mrs.
Barnes' estate, and it was sought to open such account on the
ground of errors in the statement, it would be necessary to open the
settlement *quoad* the administration, and in that case it would be the
duty of the defendant, as the representative of Barnes, who was both
guardian and administrator, to render, as best he could, the adminis-
tration account.   The form of the bill is, therefore, consistent with
the theory of the complainant's demand, and the only question is,
whether the complainant has established a case for either opening
or surcharging and falsifying the account.

Barnes was bound to account for the interest of his ward in his
mother's estate.   As the representative of the ward he could not
bind the latter by any settlement made as guardian in favor of him-
self as administrator; but in his character as guardian he could be
called upon by the ward to render an account of the administration.
The complainant, as the personal representative of the deceased
ward, succeeded to this right ; but as Barnes . was also deceased, it
could only be put in exercise as against the defendant, his personal
representative.   The relation between the ward and his guardian
was fiduciary, the guardian being bound to render full, fair and ac-
curate accounts.   This duty devolved upon the defendant, who was
bound to discharge it to the best of his ability.   He was so far
affected by the fiduciary relations existing between the original par-
ties that imposition on his part, or mistake mutually affecting the
parties, would be ground for disturbing the settlement.   As the
guardian's returns, the basis of the settlement, were acted upon as
correct, if incorrect, the consideration on which the complainant set-
tled must be regarded as affected by such incorrectness, and as we
have already seen, between parties similarly related, the inaccuracy
being shown, mutual mistake must be presumed.

In order to sustain the conclusions of the Chancellor, that a mis-
take existed sufficient to disturb the account, we must be enabled to
find in the case clear and conclusive proof that the guardian's re-
turns are false or incorrect.   But this the case does not afford.
Both the report of the Commissioner and the decree show that it
became necessary to resort to conjectural testimony, and at best
merely probable testimony, to ascertain the state of facts upon which
the question of the truthfulness and correctness of the guardian's
returns must depend.   This, as we have seen, is not admissible.

There is a strong equity with the defendant to uphold the settle-
ment, arising from the fact that on the one hand the settlement

made by him was in entire good faith, so far as appears from the case, and upon the best information that he possessed, while, on the other hand, should the account settled be opened, it will be impossible, after the great lapse of time that has occurred, the death of witnesses, and the destruction of records and documentary evidence, to take the administrator's account with reasonable approximation to justice or accuracy, if the ordinary rules as to the sufficiency of testimony are to be applied to this case.

It is by no means certain that the results of such accounting would approach nearer to the truth than the present settlement.

On the other hand, there is defect of equity on the part of the complainant, in that he is chargeable with being possessed of substantial information of the facts alleged in his bill as the ground of opening the account at the time of accounting with defendant, and neglected then to call the defendant's attention to the matters now complained of. Fair and equitable dealing requires that all matters in the knowledge of either party bearing on the settlement should be brought forward. If this obligation is complied with by one of the parties and not by the other, the party making a candid disclosure, and not meeting with the same on the other side, may be misled to the serious prejudice of his rights. As has been already said, the complainant must be regarded as having knowledge of these facts at the time of settlement—he not having alleged or proven forgetfulness at that time. The effect of such an allegation need not be considered at the present time. As this conclusion will lead to a dismissal of the bill, it will be unnecessary to consider the other questions raised by the respective grounds of appeal.

The decree must be reversed and the bill dismissed.

*Moses*, C. J., and *Wright*, A. J., concurred.